# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN DEAN DAGHITA,<br>a.k.a. "Lick;"<br><br>     *Defendant.* | Case No. 1:26-CR-63<br><br>Counts 1–4: 18 U.S.C. §§ 1343 & 2<br>Wire Fraud<br><br>Count 5: 18 U.S.C. §§ 641 & 2<br>Theft of Public Money<br><br>Counts 6–9: 18 U.S.C. §§ 1956(a)(1) & 2<br>Money Laundering<br><br>Counts 10–15: 18 U.S.C. §§ 1957 & 2<br>Unlawful Monetary Transactions<br><br>Forfeiture Notice |

## INDICTMENT

### March 2026 Term – Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### BACKGROUND ON CRYPTOCURRENCY

1.      Virtual currencies are digital tokens of value circulated over the Internet. Virtual currencies are typically not issued by any government or bank like traditional fiat currencies, such as the U.S. dollar, but rather are generated and controlled through computer software. Different virtual currencies operate on different blockchains, and there are many different widely used virtual currencies currently in circulation. Bitcoin (or BTC) and Ether (ETH) are currently the most well-known virtual currencies in use. BTC exists on the BTC blockchain and ETH exists on the Ethereum network. Typically, a virtual currency that is "native" to a particular blockchain cannot be used on a different blockchain. Thus, absent technological solutions those native assets are siloed within a

1

specific blockchain. For instance, ETH (the native token on the Ethereum network) cannot be used on other networks unless it is "wrapped" by contract code. This wrapping process results in what is called Wrapped ETH or WETH.

2. A stablecoin is a type of cryptocurrency that is pegged to a stable external asset, most commonly the U.S. dollar, to minimize price volatility. Types of stablecoin include Binance USD ("BUSD"), First Digital USD ("FDUSD"), and Tether ("USDT").

3. Virtual currency addresses are the particular virtual locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

4. There are various types of virtual currency wallets, including software wallets, hardware wallets, and paper wallets. A virtual currency wallet allows users to store, send, and receive virtual currencies. A virtual currency wallet can hold many virtual currency addresses at the same time.

5. Wallets that are hosted by third parties are referred to as "hosted wallets" because the third party retains a customer's funds until the customer is ready to transact with those funds. Conversely, wallets that allow users to exercise total, independent control over their funds are often called "unhosted" wallets.

6. Many virtual currencies publicly record all of their transactions on what is known as a blockchain. The blockchain is essentially a distributed public ledger, run by the decentralized network of computers, containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and records every virtual currency address that has ever received that virtual currency and maintains records of every transaction and all the known balances for each virtual currency address.

7. Virtual Currency Exchanges (VCEs) are trading and/or storage platforms for virtual currencies, such as BTC and ETH. Many VCEs also store their customers' virtual currency in virtual currency wallets. These wallets can hold multiple virtual currency addresses associated with a user on a VCE's network. Because VCEs act as money services businesses, they are legally required to conduct due diligence of their customers (*i.e.*, know-your-customer, or "KYC" checks) and to have anti-money laundering programs in place, to the extent they operate and service customers in the United States.

8. Tornado Cash is a decentralized cryptocurrency mixer that operates on the Ethereum blockchain and facilitates anonymous transactions by masking their origin, destination, and counterparties, with no attempt to determine their origin. While the purported purpose is to increase privacy, mixers like Tornado Cash are commonly used by illicit actors to launder funds.

9. Blockchain analysis companies analyze virtual currency blockchains and attempt to identify the individuals or groups involved in transactions. Hereinafter, amounts and U.S. Dollar approximations are based on the information provided by a private blockchain analysis company at the time the transaction occurred.

## GENERAL ALLEGATIONS

At all times relevant to the Indictment, unless otherwise stated:

10. The Asset Forfeiture Program was created in 1984 when Congress passed the Comprehensive Crime Control Act, which provided federal prosecutors and agents the legal means to seize and forfeit the economic benefit of criminal activity. Asset forfeiture plays a critical role in disrupting and dismantling illegal enterprises, depriving criminals of the proceeds of illegal activities, deterring crime, and restoring property to victims. The effective use of asset forfeiture is an essential component of the U.S. Department of Justice's efforts to combat the most sophisticated

criminal actors and organizations—including terrorist financiers, cyber criminals, fraudsters, human traffickers, and transnational drug cartels.

11. The United States Marshals Service ("USMS") is a federal law enforcement agency and a bureau within the U.S. Department of Justice. USMS is responsible for managing and disposing of most of the property that is seized and forfeited under the authority of 18 U.S.C. § 982 and 21 U.S.C. § 853 including cryptocurrency derived from, or involved in, criminal activity. The USMS manages the distribution of forfeited property and payments to victims of crime connected to those assets, and to state, local, and tribal law enforcement agencies that directly participate in the law enforcement efforts leading to the seizure and forfeiture of assets. Proceeds generated from asset sales are used to operate the program, compensate victims, and support various law enforcement efforts. The USMS Asset Forfeiture Division's Complex Assets Unit (CAU) is currently the primary custodian for all virtual currency seized under the Department's Asset Forfeiture Program.

12. COMPANY A is a small business headquartered in Haymarket, Virginia, within the Eastern District of Virginia. In or around October 2024, USMS awarded COMPANY A a managed services contract wherein COMPANY A provided USMS support for certain types of virtual currency assets, including but not limited to the virtual currencies described herein. COMPANY A was responsible for taking custody of these virtual currency assets for storage as well as disposing and liquidating virtual currency assets at the direction of USMS. As a government contractor, COMPANY A owed a duty of good faith and fair dealing to the USMS.

13. In or around January 2025, COMPANY A hired the defendant, JOHN DEAN DAGHITA, with the title "Cryptocurrency Subject Matter Expert" to work on the managed services contract with USMS. In this capacity, DAGHITA was responsible for the handling of virtual assets

4

received from USMS, to include executing virtual currency transfers and swaps in support of liquidations, disposals, and storage.

14. Beginning in or around July 2025, the USMS began sending COMPANY A virtual currency assets to COMPANY A-owned virtual currency addresses with instructions to store, liquidate, or dispose of the assets. DAGHITA was responsible for the execution of U.S. government virtual currency asset handling, transfer, and storage. As DAGHITA knew, COMPANY A was responsible for securely maintaining U.S. government virtual currency assets, which was owned by the USMS, in virtual currency wallets at Company A's office in Arlington, Virginia, in the Eastern District of Virginia.

15. COMPANY A employees, including DAGHITA, were required to handle all virtual currency assets using computers located at COMPANY A offices in Arlington, Virginia, within the Eastern District of Virginia.

16. In violation of Company A's policy and Company A's agreement with the USMS, DAGHITA intentionally and knowingly transferred virtual currency assets to wallets that neither the USMS nor COMPANY A controlled or possessed, and which DAGHITA accessed outside Company A's office in the Eastern District of Virginia.

## COUNTS ONE THROUGH FOUR
### *(Wire Fraud)*

17. The allegations contained in paragraphs 1–16 of this Indictment are realleged as if fully set forth herein.

18. From in and around November 2025 through in and around March 2026, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendant

**JOHN DEAN DAGHITA,**
**a.k.a. "Lick,"**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and transmitted and caused to be transmitted writings, signs, signals, and sounds by means of wire communication in interstate commerce.

### THE PURPOSE OF THE SCHEME AND ARTIFICE

19. The purpose of the scheme and artifice was for the defendant to enrich himself by stealing U.S. government cryptocurrency assets and to conceal his theft from the USMS and federal law enforcement authorities.

### MANNER AND MEANS

20. To accomplish the objects of this scheme, the defendant JOHN DEAN DAGHITA, a.k.a. "Lick," used the following manners and means, among others:

21. On or about December 15, 2025, DAGHITA initiated three transfers of U.S. government virtual currency assets, valued at approximately $5 million, from COMPANY A-owned wallets without authorization from USMS or COMPANY A. The cryptocurrency was transferred into wallets that DAGHITA controlled, thereby depriving the U.S. government of use and benefit, possession, and control over the property.

6

22. In and around December 2025, DAGHITA falsely represented to the USMS he needed to move the virtual currency to new virtual currency addresses because he deemed it safer to secure the assets in their own multi-signature wallet addresses rather than commingling assets.

23. In and around December 2025 and January 2026, DAGHITA used the stolen cryptocurrency to pay for designer clothing, expensive watches, trips to clubs in New York, a 2019 Lamborghini Aventador LP 770-4 SVJ, and trips to the Bahamas and Saint Barthélemy, among other things.

24. On or about January 13, 2026, DAGHITA departed the United States from Miami, Florida, on a chartered boat destined for the Caribbean.

25. On or about January 22, 2026, the USMS requested that COMPANY A return approximately $2 million worth of virtual currency to a USMS-owned address. Approximately 20 minutes later, DAGHITA transferred the virtual currency to a non-USMS-owned address.

26. On or about January 22 and 23, 2026, DAGHITA initiated multiple transfers of U.S. government virtual currency assets, valued at approximately $41 million, from COMPANY A-owned wallets without authorization from USMS or COMPANY A. The cryptocurrency was transferred into wallets that DAGHITA controlled, thereby depriving the U.S. government of use and benefit, possession, and control over the property.

27. Thereafter, DAGHITA conducted transactions utilizing Tornado Cash to obfuscate the source, nature, and ownership of the cryptocurrency he had stolen.

28. In and around January and February 2026, DAGHITA used the stolen cryptocurrency to pay for the use of a private yacht, a six-bedroom luxury villa on the island of Saint Martin, a bodyguard, and a private chef, among other things.

29. On or about March 4, 2026, DAGHITA was found on the island of Saint Martin in possession of, among other things, approximately $240,000 in U.S. currency representing the

7

proceeds of the theft of the U.S. virtual currency assets, as well as a Rolex watch, Chrome Hearts duffel bag, and multiple Trezor hardware wallets containing stolen cryptocurrency.

EXECUTIONS

30. On or about the dates indicated below, in the Eastern District of Virginia and elsewhere, the defendant, having knowingly devised and intending to devise the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowingly transmitted and caused to be transmitted in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, for the purpose of executing the above-described scheme and artifice to defraud, as indicated below, each count being a separate offense:

| Count | Approx. Date | Wire |
|---|---|---|
| 1 | 01/22/2026 | Transfer of the equivalent of approximately $12,357,844.66 in FDUSD from the custody of COMPANY A, in the Eastern District of Virginia, to a cryptocurrency wallet controlled by DAGHITA, outside of the United States. |
| 2 | 01/22/2026 | Transfer of the equivalent of approximately $3,736,110.12 in WETH from the custody of COMPANY A, in the Eastern District of Virginia to a cryptocurrency wallet controlled by DAGHITA, outside of the United States. |
| 3 | 01/23/2026 | Transfer of the equivalent of approximately $13,582,976.57 in BUSD from the custody of COMPANY A, in the Eastern District of Virginia, to a cryptocurrency wallet controlled by DAGHITA, outside of the United States. |
| 4 | 01/23/2026 | Email from a representative of the U.S. Marshals Service in the Eastern District of Virginia to DAGHITA, outside of the United States. |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
### *(Theft of Government Property)*

31.     The allegations contained in paragraphs 1–30 of this Indictment are realleged as if fully set forth herein.

32.     From in and around December 2025 through in and around January 2026, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendant

### JOHN DEAN DAGHITA,
### a.k.a. "Lick,"

willfully and knowingly attempted to and did embezzle, steal, purloin, and convert to his own use any money and thing of value of the United States or a department or agency thereof, of a value exceeding $1,000, to wit: approximately $46 million in virtual currency assets owned by the United States Marshals Service, a bureau within the United States Department of Justice, a department within the Executive Branch of the United States, held in trust by a corporate entity, funds and assets to which he knew he was not entitled.

(In violation of Title 18, United States Code, Sections 641 and 2.)

## COUNTS SIX THROUGH NINE

### *(Concealment Money Laundering)*

33.     The allegations contained in paragraphs 1–32 of this Indictment are realleged as if fully set forth herein.

34.     On or about January 27, 2026, in the Eastern District of Virginia and elsewhere, the defendant,

**JOHN DEAN DAGHITA,**
**also known as "Lick,"**

did knowingly conduct or attempt to conduct the financial transactions described in the table further below, affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity—that is, wire fraud, in violation of 18 U.S.C. § 1343, and theft of public money, in violation of 18 U.S.C. § 641—knowing that: (i) the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and (ii) the property involved in the financial transactions represented the proceeds of some form of unlawful activity, each count being a separate offense:

| Count | Approx. Date and Time | Approx. Amount | Description | Transaction Hash |
|---|---|---|---|---|
| 6 | 1/27/2026 16:18 EST | Equivalent of $301,711.20 in USDT | Transfer to Tornado Cash | 0x44...e246 |
| 7 | 1/27/2026 16:30 EST | Equivalent of $301,711.20 in USDT | Transfer to Tornado Cash | 0x8d...8311 |
| 8 | 1/27/2026 16:36 EST | Equivalent of $301,711.20 in USDT | Transfer to Tornado Cash | 0xa1...6bc0 |
| 9 | 1/27/2026 16:40 EST | Equivalent of $301,711.20 in USDT | Transfer to Tornado Cash | 0x7b...c1ea |

(In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNTS TEN THROUGH FIFTEEN
### *(Unlawful Monetary Transaction)*

35. The allegations contained in paragraphs 1–34 of this Indictment are realleged as if fully set forth herein.

36. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, the defendant,

### JOHN DAGHITA,
### also known as "Lick,"

did knowingly engage and attempt to engage in the monetary transactions described in the table further below, by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity—that is, wire fraud in violation of 18 U.S.C. § 1343, and theft of government property, in violation of 18 U.S.C. § 641—each count being a separate offense:

| Count | Approx. Date and Time | Approx. Amount | Description |
|---|---|---|---|
| 10 | 12/18/2025 15:42 EST | Equivalent of $773,892.27 in USDT | Payment for New Year's Eve trip to Saint Barthélemy |
| 11 | 12/20/2025 13:20 EST | Equivalent of $719,720.31 in USDT | Payment for purchase of Lamborghini |
| 12 | 1/13/2026 20:13 EST | Equivalent of $179,888.48 in USDT | Payment for transportation from Miami, Florida, to the Caribbean |
| 13 | 1/26/2026 14:59 EST | Equivalent of $1,089,771.45 in ETH | Purchase of the Telegram username "@devil" |
| 14 | 1/26/2026 15:12 EST | Equivalent of $205,697.11 in ETH | Purchase of the Telegram username "@skid" |
| 15 | 1/26/2026 23:10 EST | Equivalent of $888,534.25 in ETH | Purchase of the Telegram username "@fraud" |

(In violation of Title 18, United States Code, Sections 1957 and 2.)

## FORFEITURE ALLEGATION

THE GRAND JURY FURTHER FINDS that there is probable cause that the property described below is subject to forfeiture.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant JOHN DEAN DAGHITA is hereby notified that if convicted of any of the offenses set forth in Counts One through Five in the Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant's interest in any property, real or personal, constituting or derived from proceeds traceable to the offense.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant JOHN DEAN DAGHITA is hereby notified that if convicted of any of the offenses set forth in Counts Six through Fifteen in the Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, a monetary judgment in the amount of not less than $46,114,909.46, representing the amount of proceeds the defendant obtained as a result of the violations described in this Indictment. The property subject to forfeiture also includes, but is not limited to:

a. 577,117.743996 USDT held in wallet address TBqZLvWEBr2dLN9JkdgCHBisr98R2Bt5Gx;

b. 216,000 USDT held in wallet address TW3oZDfMJZwaZ67PPxFzxE4mF9oedYVPDz;

c. 66,979.006288 USDT held in wallet address TDLcRL3ExZPiCsBQbDcfppdsGCULY4Zh3Q;

d. 2019 Lamborghini Aventador LP 770-4 SVJ, VIN ZHWUM6ZD7KLA08087;

e. $239,348 cash seized by French authorities on March 4, 2026, during a search of Villa Sun Reset in Saint Martin;

f. Rolex GMT Master 2, serial number R5022373 seized by French authorities on March 4, 2026 during a search of Villa Sun Reset in Saint Martin;

g. Ledger hardware wallets, and all cryptocurrency tokens derived from, seized by French authorities on March 4, 2026, during a search of Villa Sun Reset in Saint Martin;

h. Trezor hardware wallets, and all cryptocurrency tokens derived from, seized by French authorities on March 4, 2026 during a search of Villa Sun Reset in Saint Martin;

i. Cryptocurrency tokens derived from seed phrase beginning with "funding" and ending with "advance," seized by French authorities on March 4, 2026; during a search of Villa Sun Reset in Saint Martin;

j. Cryptocurrency tokens derived from seed phrase beginning with "submit" and ending with "tonight," seized by French authorities on March 4, 2026; during a search of Villa Sun Reset in Saint Martin;

k. Chrome Hearts Multicolor Cross Patch duffel bag seized by French authorities on March 4, 2026, during a search of Villa Sun Reset in Saint Martin;

l. 9,793 TON and all non-fungible tokens held in wallet address UQCVzISJ0qiEXCw8jDBIRZef0VojLMYYOKFfe_szxaVaGEC1;

m. All non-fungible tokens held in wallet address UQDqvnplvH-5oGuxKVScvxmNBhPRjrbextbpPESvqQnnsCbL;

n. All non-fungible tokens held in wallet address UQAvjg3yueMgv_dIX03ndlxLQfnJBL7o0GBM9a_lTY6JndrW;

o. All non-fungible tokens held in wallet address UQC1rWNwPyaysKKV9i7bisI2Eug1RNhJetPugeOz4VzuwwX5;

p. All non-fungible tokens held in wallet address UQBrCVF_joinCJ3OXOoh2XwRgBHbMRK02fLfvIiCcMfTzQ1-;

q. All non-fungible tokens held in wallet address UQDg7hSS204CzmDPVFSNObos2S5OuFBeEscj8YGlYcEHC4pS;

r. All non-fungible tokens held in wallet address UQDIwCt1PB9GOTnmuCPZnykF8-dn_ZH-0bH_Hmamofw_uwQf;

s. All non-fungible tokens held in wallet address UQC5VA4uzdcFgwdMCNLW96iCzc1SNBGvDQz_admOzGW9QZ-7;

t. All non-fungible tokens held in wallet address UQDCHc2sHvvUFKIuoiGUK7viHPG6El7jeMR1LI-XyOiLCoFg; and

13

u. All non-fungible tokens held in wallet address
   UQAij4bhCYIJaw3mP84WDFuJ24pSSxVsB4Jga7WlfNBGD-Cq:

If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty; it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under 21 U.S.C. § 853(p).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p); and Federal Rule of Criminal Procedure 32.2(a))

A TRUE BILL

Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office

GRAND JURY FOREPERSON

Todd W. Blanche
Deputy Attorney General

By:

Katherine E. Rumbaugh
Jack A. Morgan
Assistant United States Attorneys

14